IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| KEITH COOPER, | * |
| Plaintiff, | * |
| vs. | * |
| | CASE NO. 4:18-CV-82 (CDL) |
| MIDLAND CREDIT MANAGEMENT, INC., | * |
| | * |
| Defendant. | * |

O R D E R

Keith Cooper brought this putative class action alleging that Midland Credit Management, Inc. sent him a collection letter that violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. Presently pending before the Court is Midland Credit Management, Inc.'s motion to dismiss (ECF No. 5). As discussed below, the motion is granted.

MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual

allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

FACTUAL ALLEGATIONS

Keith Cooper owes a debt to Midland Funding, LLC based on Cooper's use of a revolving line of credit he obtained from Credit One Bank. The debt servicer, Midland Credit Management, Inc. ("Midland") sent the following collection letter to Cooper:

Dear Keith Cooper,

**CALL US TODAY! (877) 231-8886**

**AVAILABLE PAYMENT OPTIONS**

Option 1: 40% OFF

Option 2: 20% OFF Over 6 Months

Option 3: Monthly Payments As Low As: $50 per month
Call today to discuss your options and get more details.

**Benefits of Paying Your Debt**
– Save $456.00 if you pay by 06-23-2017 –
– Put this debt behind you –
– No more communication on this account –
– Peace of mind –

Hours of Operation
Sun-Th: 5am-9pm PT;
Fri-Sat: 5am-4:30pm PT;

Sincerely,

*Tim Bolin*

Tim Bolin, Division Manager

The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau.

2

Compl. Ex. A, Collection Letter (May 24, 2017), ECF No. 1-1. At the time of the letter, the debt was more than six years old, so a lawsuit to recover the debt was time-barred under Georgia law.[1]

Cooper does not allege that he selected any of the payment options. Cooper does allege that if he did make a partial payment, that "would potentially re-start the statute of limitations on the debt under Georgia law." Compl. ¶ 31, ECF No. 1. Cooper further alleges that Midland's letter "is misleading and deceptive since it fails to advise [Cooper] that if he takes advantage of any of the payment options, such payment(s) would be a new promise to pay that would restart the statute of limitations clock in Georgia thus exposing him to a potential lawsuit." *Id.* ¶ 32. Cooper does not allege facts to suggest that Midland *would* sue him following a partial payment,

---

[1] Midland's disclosure regarding the statute of limitations comes directly from a consent decree between Midland, several related companies, and the U.S. Consumer Financial Protection Bureau. Consent Decree, CFPB Administrative Proceeding No. 2015-CFPB-0022 (Sept. 9, 2015), *available at* http://files.consumerfinance.gov/f/201509_cfpb_consent-order-encore-capital-group.pdf. The consent decree orders that if Midland attempts to collect time-barred debt, it must make the following disclosure to the consumer: "The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau." *Id.* ¶ 133(b)(i). The consent decree further states that Midland is "permanently restrained and prohibited from . . . [m]aking any representation or statement, or taking any other action that interferes with, detracts from, contradicts, or otherwise undermines the disclosures required in" ¶ 133(b). *Id.* ¶ 133(c). The consent decree also prohibits resale of debt except in limited circumstances. *Id.* ¶ 130.

and in fact, Cooper alleged that Midland unequivocally stated that it will not sue him. *See id.* ¶ 28.

DISCUSSION

To prevail on his FDCPA claim, Cooper must establish that: (1) he was the object of collection activity arising from consumer debt; (2) Midland is a debt collector under the FDCPA; and (3) Midland engaged in a practice prohibited by the FDCPA. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 (11th Cir. 2010) (per curiam) (explaining that a "debt collector" engaging in "collection activity" to recover an outstanding "consumer debt" "is subject to the FDCPA"). Here, Midland does not dispute that Cooper was the object of collection activity arising from consumer debt or that it is a debt collector under the FDCPA. The dispositive question is whether Cooper adequately alleged an FDCPA violation.

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including false representations about "the character,

amount, or legal status of any debt" and "any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692e(2)(A) & 1692e(10).[2] The FDCPA also prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Thus, a debt collector may communicate with a consumer and seek voluntary payment of a stale debt as long as it does not threaten litigation, mislead the consumer about the debt, or use an unfair means of attempting to collect a debt.

To determine whether a collection letter violates the FDCPA, the courts use a "least sophisticated consumer" standard. *LeBlanc*, 601 F.3d at 1193. Under this standard, the Court "looks to the tendency of language to mislead the least sophisticated recipients of a debt collector's letters." *Id.* at 1194 (quoting *Jeter v. Credit Bureau Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985)). The standard presumes that the least sophisticated consumer has "a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* at 1194 (quoting *Clomon v. Jackson*, 988

---

[2] For example, it is clear that "a debt collector's threatening to sue on a time-barred debt and/or filing a time-barred suit in state court to recover that debt violates" the FDCPA. *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1259 (11th Cir. 2014) (finding that a debt collector violated the FDCPA by filing of a proof of claim to collect a stale debt in a bankruptcy proceeding). Cooper does not appear to argue that the least sophisticated consumer could be misled into believing that Midland was threatening legal action if he did not pay the debt. Such a conclusion would be inconsistent with the plain language of the letter Midland sent to Cooper.

5

F.2d 1314, 1319 (2d Cir. 1993)). It is intended to protect "naive consumers" while preventing "liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)).

Here, Cooper argues that Midland's collection letter is misleading because the least sophisticated consumer could be misled into making a partial payment, which could revive the statute of limitations under Georgia law. Cooper is correct that in Georgia, a debtor's underlying debt is not extinguished by the statute of limitations even if an action to recover it is time-barred. *Martin v. Mayer*, 11 S.E.2d 218, 227 (Ga. Ct. App. 1940). And, the statute of limitations could be revived if there is a "new promise to pay," which could be in the form of "[a] payment entered upon a written evidence of debt by the debtor or upon any other written acknowledgment of the existing liability." O.C.G.A. § 9-3-112. "A new promise, in order to renew a right of action already barred . . . shall be in writing, either in the party's own handwriting or subscribed by him or someone authorized by him." O.C.G.A. § 9-3-110. Thus, to restart the statute of limitations under Georgia law, "the acknowledgment of the debt must be communicated to the creditor and it 'must sufficiently identify the debt or afford the means by which [the debt] might be identified with reasonable

6

certainty.'" *SKC, Inc. v. EMAG Sols., LLC*, 755 S.E.2d 298, 301–02 (Ga. Ct. App. 2014) (alterations in original) (quoting *Middlebrooks v. Cabaniss*, 20 S.E.2d 1012 (Ga. 1942)).

The Georgia courts have held "that when payment to a creditor is accompanied by some notation sufficient to identify the debt being paid, that payment and notation constitute a new promise to pay which renews the running of the limitations period." *Id.* So, if a debtor makes a partial payment by check or wire transfer to a creditor with a notation indicating that the payment should be applied to the debt on his account, then those payments with the notations constitute a new promise to pay. Given that a partial payment could revive the statute of limitations under Georgia law if it is accompanied by a writing evidencing a new promise to pay the debt, Cooper asserts that Midland's letter should have warned him of this possibility, even though Midland stated in the letter that it would not sue him for the debt.

The Court recognizes that at the motion to dismiss stage, it must draw all reasonable inferences in favor of Cooper. Cooper alleges that if he made a partial payment, that could "potentially re-start the statute of limitations" and that he would be exposed to a "potential lawsuit." Compl. ¶¶ 31–32. But Cooper did not allege any facts to suggest that Midland would disregard its promise not to sue him for the debt and

instead pursue a claim against him if he made a partial payment accompanied by a notation sufficient to revive the statute of limitations. In the absence of such factual allegations, Midland's letter would only be misleading or amount to an unfair means of attempting to collect a debt if the Court inferred from Cooper's allegations that Midland would do exactly what it said it would not do: sue Cooper for the debt. So, the Court would have to infer that Midland's letter amounts to attempted fraudulent inducement—that "we will not sue you for the debt" actually means "we will not sue you for the debt unless you make a partial payment." The Court finds that such an inference is implausible and therefore concludes that Cooper's claim must be dismissed. Of course, if Midland *did* renege on its promise not to sue and instead recalculated the statute of limitations based on a partial payment, then either sued Cooper on the debt or resold the debt to someone who sued him on it, Cooper would have a good argument that Midland used an unfair or unconscionable means of collecting a debt. And he could have a claim at that time.

The Court acknowledges that while the Eleventh Circuit has not spoken on this issue, other courts have arguably reached a different conclusion. The Court is not persuaded that the rationale of those cases applies under the factual allegations here. In *Pantoja v. Portfolio Recovery Associates, LLC*, 852

F.3d 679 (7th Cir. 2017), the Seventh Circuit evaluated a collections letter that offered to "settle" a time-barred debt and stated: "Because of the age of your debt, we will not sue you for it and we will not report it to any credit reporting agency." *Pantoja*, 852 F.3d at 682. The letter cautioned the consumer that the debt collector was "not obligated to renew this offer." *Id.*

The Seventh Circuit found that the letter was misleading as a matter of law at the summary judgment stage because it did not "hint, let alone make clear to the recipient, that if he makes a partial payment or even just a promise to make a partial payment, he risks loss of the otherwise ironclad protection of the statute of limitations." *Id.* at 684.[3] The Seventh Circuit observed that "the FDCPA prohibits a debt collector from luring debtors away from the shelter of the statute of limitations without providing an unambiguous warning that an unsophisticated consumer would understand." *Id.* at 685. Because the debt

---

[3] A few district courts have reached similar conclusions for similar reasons. *See, e.g.*, *Baye v. Midland Credit Mgmt., Inc.*, No. CV 17-4789, 2017 WL 4918998, at *10 (E.D. La. Oct. 31, 2017) (concluding that the court was bound by the Fifth Circuit's opinion in *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2016) and that the *Daugherty* court *held* "that inviting partial payment, without disclosing the possibility of reviving the time-barred claim, could violate the FDCPA"); *Smothers v. Midland Credit Mgmt., Inc.*, No. 16-2202-CM, 2016 WL 7485686 (D. Kan. Dec. 29, 2016) (concluding, as a matter of law, that debt collector's letter seeking to collect stale debt violated the FDCPA even though it promised not to sue the consumer for it because the letter did not contain a revival disclosure and the debt collector could potentially resell the debt to a collector who had not made a promise not to sue).

9

collector's letter did not warn of the potential revival of the statute of limitations, the Seventh Circuit concluded that it violated the FDCPA as a matter of law. *Id.* at 685-86.

This conclusion, however, is largely intertwined with the Seventh Circuit's second conclusion—that the offer to "settle" the debt "did not make clear to the recipient that the law prohibits the collector from suing to collect th[e] old debt." *Id.* at 684. The letter in *Pantoja* offered to "settle" the consumer's debts and said, "we will not sue you" but did not mention that the debt was time-barred. And, it said that the debt collector was not obligated to renew the offer. The Seventh Circuit determined that the least sophisticated consumer might conclude based on this language that the debt was legally enforceable but that the debt collector had simply chosen not to sue him on it at that time.

Here, in contrast, Midland's letter stated: "The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau." Collection Letter at 1. Based on Midland's statement that the law limits how long a consumer can be sued on a debt, the letter would not mislead the least sophisticated consumer into believing that Midland was seeking to collect on a legally enforceable debt.

10

The Court agrees with the Seventh Circuit that it would be an FDCPA violation to suggest to a consumer that his debt is judicially enforceable when it is time-barred. The Court also agrees that it would be an FDCPA violation to try to lure a consumer into reviving the statute of limitations on his debt so that the debt collector may pursue legal action to collect the debt. But the Seventh Circuit disregarded the debt collector's express statement that it would not sue the consumer for the debt, and that is where the Court disagrees with the rationale of *Pantoja*.

In the Court's view, an attempt to collect on a stale debt only amounts to "luring" a consumer away from the statute of limitations if that attempt could be a trap. And, disclosure of the potential consequences of a partial payment would be material to a consumer only if the partial payment could harm him. Could Midland's letter induce Cooper to make a partial payment? Yes. But partially paying a non-extinguished debt, by itself, is not a harm to Cooper. A partial payment can only harm Cooper if it constitutes a new promise to pay the entire debt under Georgia law *and* if Midland uses the partial payment to restart the statute of limitations. In its letter, Midland expressly promised not to do so. It is difficult to see the harm in requesting a voluntary payment of a debt that is time-barred but not extinguished if (1) the consumer is informed (as

11

Cooper was) that the debt is time-barred and (2) the debt collector has promised not to sue the consumer on the debt and would thus violate that promise if it used the partial payment to restart the statute of limitations and sue the debtor. *Cf. Koerner v. Midland Credit Mgmt., Inc.*, No. 8:17-CV-1396-T-27CPT, 2018 WL 5961285, at *2 (M.D. Fla. Oct. 26, 2018) (concluding, at the summary judgment stage, that the failure to provide a revival disclosure did not violate the FDCPA because there was "no scenario in which the statute of limitations would be revived and consequently, there is nothing misleading about the collection letters").

The Court understands that several appellate courts have, in dicta and under different factual allegations, expressed concern about a debt collector's failure to disclose the possibility that a partial payment may revive the statute of limitations for a stale debt. *See Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 399 (6th Cir. 2015) (discussing the potential pitfalls for consumers in the absence of a revival disclosure but *holding* that dismissal of an FDCPA claim should be reversed because the debt collector's letter offering a "settlement" of time-barred debt without disclosing that the debt was time-barred could mislead a consumer to believe that her time-barred debt is legally enforceable); *see also Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 513 (5th Cir.

12

2016) (same). In both cases, the debt collector attempted to "settle" the consumers' time-barred debt *without disclosing that the debt was judicially unenforceable*, and the courts found the collection letters to be misleading on that ground. The courts did not have to decide whether the failure to provide a revival disclosure, standing alone, violated the FDCPA under the fact pattern here, where the debt collector *did* disclose that the debt was time-barred and promised not to sue the consumer for it. Notably, the Sixth Circuit in *Buchanan* suggested that the debt collector could cure the problems in its letter by providing the following notice: "The law limits how long you can be sued on a debt. Because of the age of your debt, [debt collector] will not sue you for it, and [debt collector] will not report it to any credit reporting agency." *Buchanan*, 776 F.3d at 400 (citing the record). This disclosure is nearly identical to the disclosure Midland provided to Cooper.

The Court hastens to add that if this were a case alleging that the debt collector devised a scheme to mislead the consumer to refresh a stale debt, then the outcome would be different. But Cooper does not allege such a scheme, likely because there is nothing to indicate that Midland would pursue a lawsuit to collect the debt if a partial payment were voluntarily made. Instead, Cooper seeks to have a class action certified based on the remote *possibility* that a consumer could be misled into

13

renewing an old debt and based on sheer *speculation* that the debt collector would then pursue collection of that renewed debt in court, notwithstanding the fact that it said it would not do so. Such speculation does not support an FDCPA claim.[4]

CONCLUSION

For the reasons set forth above, Midland's motion to dismiss (ECF No. 5) is granted.

IT IS SO ORDERED, this 11th day of December, 2018.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[4] The Court observes that if Midland would be entitled to summary judgment if the Court let discovery proceed and discovery revealed that Midland had no intention of pursuing a lawsuit to recover stale debts revived under Georgia law by partial payments, then Midland is entitled to dismissal at this stage if Cooper has failed to even allege that Midland had any intention of suing Cooper on the debt.